# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**DANIEL KENDRICKS,**

   **Movant,**

**v.**                                                    **Case No.: 8:19-cv-3012-CEH-TGW**
                                                         **Crim. Case No. 8:17-cr-41-CEH-TGW**

**UNITED STATES OF AMERICA,**

   **Respondent.**

_____/

## ORDER

Before the Court is Daniel Kendrick's amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and supporting memorandum of law. (Docs. 1, 4). The United States filed a response in opposition. (Doc. 6). Kendricks filed a reply. (Doc 7). With leave of Court, Kendricks also filed a supplemental section 2255 claim, to which the United States responded in opposition. (Docs. 8, 16, 17). After reviewing the parties' submissions and the record, the Court will deny Kendrick's amended section 2255 motion and supplemental claim on their merits.[1]

---

[1]   The motion can be denied without the need for an evidentiary hearing, as no hearing is required when the record establishes that a Section 2255 claim lacks merit. *See United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984).

## I. BACKGROUND AND PROCEDURAL HISTORY

Kendricks was charged in a one-count indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. 1).[2] The indictment outlined 16 prior felony convictions. (*Id.* at 1–2). Kendricks waived his right to a jury trial and signed a stipulation acknowledging that prior to possessing the firearm and ammunition, he had been convicted of a felony; none of his felony convictions had been expunged, set aside, or pardoned; and that his right to possess a firearm and ammunition had not been restored. (Cr-Docs. 117, 118). This Court adjudicated Kendricks guilty following a bench trial. (Cr-Docs. 122, 123).

The United States Probation Office prepared a pre-sentence investigation report in which it determined that Kendricks was an armed career criminal based on four prior convictions for aggravated assault, aggravated battery, and sale of cocaine. (Cr-Docs. 133 ¶¶ 22, 28, 29, 35, 39). He faced a statutory minimum term of 15 years and up to life in prison, and an advisory guideline term of 180 months. (*Id.* ¶¶ 83, 84).[3]

---

[2]   References to filings in Kendricks's criminal case, Case Number 8:17-cr-41-T-36TGW, are cited as "Cr-Doc. [document number]."

[3]   Under the Armed Career Criminal Act ("ACCA"), a defendant is subject to a 15-year mandatory minimum term of imprisonment if he is convicted of being a felon in possession of a firearm or ammunition after being previously convicted of three prior convictions for a "violent felony" or a "serious drug offense." *See* 18 U.S.C. § 924(e). A "violent felony" includes any crime punishable by imprisonment for a term exceeding one year, that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. 18 U.S.C. § 924(e)(2)(B)(i)–(ii). The term "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act ["CSA"] (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

Kendricks objected to the aggravated assault and aggravated battery convictions being used to designate him an armed career criminal, arguing that those convictions were not his and that they were not violent felonies. (*Id.* at 25–30, 82–89 (Addendum)). The United States provided documentation supporting the use of those convictions as predicate offenses. (*Id.* at 33–81; *see also* Cr-Doc. 136). Defense counsel also filed a sentencing memorandum requesting a variance, arguing that Kendricks did not qualify as an armed career criminal. (Cr-Doc. 137).

At sentencing, Kendricks continued to object to the use of his aggravated assault and aggravated battery convictions as armed career criminal predicates. (Cr-Doc. 154 at 5, 9–18). The United States presented testimony, including fingerprint evidence, proving that the convictions were Kendricks's. (*Id.* at 20–24, 26–54). This Court overruled Kendricks's objections, finding that those prior convictions qualified as armed career criminal predicates and that he was an armed career criminal. (*Id.* at 70–72). Kendricks's 180-month sentence was the mandatory term of imprisonment. (*Id.* at 76–77, 79; Cr-Docs. 141, 144).

Kendricks appealed his conviction and sentence. (Cr-Doc. 146). On appeal, he argued that this Court erred in denying his motion to suppress and holding that his prior convictions under Florida's aggravated assault and aggravated battery statutes qualified as "violent felonies" under the Armed Career Criminal Act ("ACCA"). (Cr-Doc. 159 at 1–2). Kendricks also argued that his sentence violated the Fifth and Sixth Amendments because his prior convictions were not charged in the indictment or proven beyond a reasonable doubt, and that 18 U.S.C. § 922(g)(1) was facially

unconstitutional. (*Id.* at 12–13). The Eleventh Circuit affirmed Kendricks's judgment of conviction and sentence. (Cr-Doc. 159 at 13). *United States v. Kendricks*, 758 F. App'x 687 (11th Cir. 2018). The Supreme Court denied Kendricks's petition for a writ of certiorari in May 2019. (Cr-Doc. 161). *Kendricks v. United States*, 587 U.S. 996, 139 S. Ct. 2038, 204 L. Ed. 2d 236 (2019).

The United States acknowledges that Kendricks timely filed his amended section 2255 motion on December 26, 2019, within one year of the date on which his conviction became final, in compliance with 28 U.S.C. § 2255(f). (*See* Doc. 6 at 5). In his motion, Kendrick claims that he is actually innocent of violating 18 U.S.C. § 924(e) (Ground One); that pursuant to the Supreme Court's opinion in *Rehaif v. United States*, 588 U.S. 225, 139 S. Ct. 2191, 204 L. Ed. 2d 594 (2019), his conviction must be vacated because 18 U.S.C. § 922(g)(1) fails to state a federal crime (Ground Two); that his indictment fails to charge an essential element (Ground Three); and that his counsel was ineffective for not raising the claims in Grounds One through Three earlier (Ground Four). (*See generally* Doc. 4). As his supplemental claim, Kendricks argues that he is not subject to the ACCA enhancement because Florida convictions for aggravated assault and aggravated battery are not qualifying predicate offenses, as they are no longer "violent felonies" after the Supreme Court issued its opinion in *Borden v. United States*, 593 U.S. 420, 141 S. Ct. 1817, 210 L. Ed. 2d 63 (2021). (*See generally* Doc. 8).

For the reasons argued by the United States, Kendricks's claims are meritless.

**II. BURDEN OF PROOF**

Pursuant to Title 28, United States Code, § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. *United States v. Addonizio*, 442 U.S. 178, 184–86 (1979); *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). Notably, in general, on collateral review the petitioner bears the burden of proof and persuasion on every aspect of his claim, *Beeman v. United States*, 871 F.3d 1215, 1221–25 (11th Cir. 2017) (collecting cases), which is "a significantly higher hurdle than would exist on direct appeal" under plain error review, *see United States v. Frady*, 456 U.S. 152, 164–66 (1982).

### III. SECTION 2255 MOTION

*Ground One*

Kendricks claims that he is actually innocent of violating the ACCA, arguing that his prior conviction for the sale of cocaine under Florida's drug trafficking statute, section 893.13, Florida Statutes, does not support an ACCA sentencing enhancement because it was not a "serious drug offense". Under the ACCA, a defendant faces a 15-year mandatory minimum sentence if he is convicted of being a felon in possession of a firearm or ammunition following three prior felony convictions for a "violent felony," a "serious drug offense," or a combination of both. *See* 18 U.S.C. § 924(e)(1). A "serious drug offense" includes an offense under State law involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . ., for which a maximum term of imprisonment of ten years or more is prescribed by law [.]" *See* 18 U.S.C. § 924(e)(2)(a)(A)(ii). This Court found that Kendricks had four qualifying convictions. Kendricks contends that a drug conviction under section 893.13, Florida Statutes, does not qualify as a "serious drug offense" because that statute is broader than the generic offenses listed in the ACCA's definition, all of which have a mens rea element. (*See* Doc. 4 at 6–7).

At the time of Kendricks's sentencing, however, it was Eleventh Circuit precedent that prior convictions for violations of section 893.13(1), Florida Statutes, qualify as serious drug offenses. *United States v. Smith,* 775 F.3d 1262, 1266–67 (11th Cir. 2014). *Smith* is still binding precedent. *United States v. Pridgeon*, 853 F.3d 1192,

6

1198 (11th Cir. 2017) ("We are bound to follow *Smith*."); *United States v. Archer,* 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this court sitting en banc").

Further, Kendricks's claim is now foreclosed by the Supreme Court's holding in *Shular v. United States*, 589 U.S. 154, 140 S. Ct. 779, 206 L. Ed. 2d 81 (2020). In *Shular*, the Supreme Court held that the ACCA's "'serious drug offense' definition requires only that the state offense involve the conduct specified in the federal statute; it does not require that the state offense match certain generic offenses." 140 S. Ct. at 784–87. In Shular's view, as in Kendricks's view, the ACCA identified generic offenses whose elements a court must first expound, then compare with the elements of the state crime to determine whether a match exists. *Id.* at 784–85. However, the Court agreed with the government that a sentencing court should, as a categorical matter, ask whether the state crime's elements involve the conduct described in the ACCA. *Id.*

In *Shular*, the Supreme Court first observed that section 924(e)(2)(A)(ii)'s language ("manufacturing, distributing, or possessing with intent") contains "unlikely names for generic offenses." 140 S. Ct at 785.[4] Next, the Court observed that the statutory language includes the term "involve[s]" and found that "[i]t is natural to say that an offense 'involves' or 'requires' certain conduct." *Id.* The Court contrasted that language with that statute's enumerated offenses clause, which uses the term "is"—a

---

[4] Section 893.13(1)(a), Florida Statutes, provides that "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance".

formulation that "indicates a congruence between 'crime' and the terms that follow." *Id.* The Court then determined that "section 924(e)(2)(A)(ii)'s text and context leave no doubt that it refers to an offense involving the conduct of 'manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance.'" *Id.* at 787. "Because those terms describe conduct and do not name offenses, a court applying section 924(e)(2)(A)(ii) need not delineate the elements of generic offenses." *Id.* As a consequence, Kendricks's prior drug conviction for the sale of cocaine, in violation of section 893.13(1)(a), Florida Statutes, constitutes a "serious drug offense" and, thus, a qualifying ACCA predicate offense. Ground One is, therefore, denied as meritless.

### *Grounds Two and Three*

Kendricks claims that the Supreme Court's decision in *Rehaif* requires that his section 922(g)(1) conviction be vacated for (1) section 922(g)(1)'s failure to state a federal crime (Ground Two) and (2) the indictment's failure to charge an essential element of section 922(g)(1), knowledge that he was a convicted felon at the time of possession of the firearm or ammunition (Ground Three). (Doc. 4 at 7–10).

In *Rehaif*, the defendant, a citizen of the United Arab Emirates, had entered the United States on a nonimmigrant student visa to attend a university, but withdrew from or failed his classes and was dismissed from the university with a warning that his status as a lawful alien would be terminated unless he was admitted elsewhere. *See* 139 S. Ct. at 2194. The defendant responded by moving to a hotel and frequenting a firing range. *Id.* at 2201–02. Federal authorities learned about the defendant's target

8

practice and charged him with possession of a firearm by an illegal alien. *Id.* at 2194, 2201–02.

Based on binding precedent, the trial court instructed the jury over the defendant's objection that the United States was not required to prove that, at the time he possessed a firearm, the defendant knew that he was illegally or unlawfully in the United States. *Id.* at 1294. The jury found the defendant guilty, and the defendant challenged the jury instructions on appeal. *Id.* The Eleventh Circuit affirmed, concluding that the law generally does not require a defendant to know his own status and noting that no court of appeals had required the United States to establish a defendant's knowledge of his status in the analogous context of felon-in-possession prosecutions. *Id.* at 2194–95.

On certiorari review, the Supreme Court examined the text of section 922(g) and its unenhanced penalty provision, 18 U.S.C. § 924(a)(2), which proscribes a 10-year maximum penalty for someone who "knowingly violates" various subsections of 922, including subsection (g). 139 S. Ct. at 2194. Reasoning that the term "knowingly" modified the verb "violates" and its direct object, section 922(g), the court applied a longstanding interpretative presumption in favor of scienter and examined the elements of a section 922(g) offense to determine "what it means for a defendant to know that he has 'violated' section 922(g)." *Id.* at 2195–96. The court described the elements of section 922(g) as "(1) a status element (in this case, "being an alien . . . illegally or unlawfully in the United States"); (2) a possession element (to "possess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a

9

"firearm or ammunition"). *Id.* The court excluded the jurisdictional element, which the court said had "nothing to do with the wrongfulness of the defendant's conduct" and was "not subject to the presumption in favor of scienter[,]" and reasoned that, "[a]ssuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent. It is therefore the defendant's *status*, and not his conduct alone, that makes the difference." *Id.*, at 1296–97 (internal citation omitted; emphasis in original). The court thus concluded that Congress intended to require the United States to prove that the defendant knew his status. *Id.* at 2196–99.

The court distinguished a defendant's ignorance of his status from ignorance of the law. *Id.* at 2198–99. Acknowledging the "well-known maxim that 'ignorance of the law' … is no excuse[,]" the court explained that the maxim:

> applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be unaware of the existence of a statute proscribing his conduct. In contrast, the maxim does not normally apply where a defendant has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct, thereby negating an element of the offense.

*Id.* at 2198 (internal punctuation and citations omitted).

Ultimately, the court remanded the case to the Eleventh Circuit to consider whether the error in the jury instructions was harmless. *Id.* at 2200. Although the court expressed no view about "what precisely the [United States] must prove to establish a defendant's knowledge of status in respect to other section 922(g) provisions," the court doubted that the requirement would be "burdensome," pointing to its prior

10

holding that "knowledge can be inferred from circumstantial evidence." *Id.* at 2198, 2200.

On remand from the Supreme Court following its decision in *Rehaif*, the Eleventh Circuit, in *United States v. Reed*, 941 F.3d 1018 (11th Cir. 2019), reconsidered a defendant's request to vacate his felon-in-possession conviction. Reed claimed that his indictment failed to allege, his jury was not instructed to find, and the government was not required to prove that he knew he was a felon when he possessed the firearm. *Id.* at 1019–20. His claim was reviewed for plain error, that is, error that "was both plain and that affected [Reed's] substantial rights."[5] *Id.* at 1021. Although Reed established error that *Rehaif* made plain, both in his indictment and at his trial, he failed to "show a reasonable probability that, but for the error[s], the outcome of [his trial] would have been different." *Id.* (other citation omitted).

The Eleventh Circuit affirmed Reed's conviction, finding that, based on his stipulation, testimony, and admissions, the jury could have inferred that Reed knew he was a felon. *Id.* at 1021–22. The evidence on which the court relied included that Reed had eight prior felony convictions and that he had served 18 years in prison before possessing the firearm. *Id.*

---

[5]  The plain-error test has four prongs: there must be (1) an error, (2) that is plain, and (3) that has affected the defendant's substantial rights. If the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error seriously affects the fairness, integrity or public reputation of the proceedings. *United States v. Ward*, No. 19-10470, 2019 WL 6461259, at *4 (11th Cir. Dec. 2, 2019) (unpublished) (per curiam) (internal citations omitted). To show that an error affected his substantial rights, a defendant must show a reasonable probability that, but for the error, the outcome of the proceedings would have been different. *Id.* (citing *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). Kendricks has an even higher burden on collateral review.

Here, Kendricks, like Reed, knew he was a convicted felon. Kendricks moved to suppress the search that led to the discovery of the loaded firearm. (Cr-Doc. 16). This Court conducted a two-day hearing on his suppression motion. (Cr-Docs. 42, 67). Testimony showed that Kendricks informed an officer he had been to prison, an admission that was confirmed. (Cr-Doc. 86 at 4–9). This Court denied the motion to suppress (*id.* at 26), and approximately one month later, Kendricks waived his right to a jury trial and proceeded to a bench trial. (C-Docs. 117, 118, 125).

Kendricks never challenged the knowledge-of-status element of his conviction. His status as a convicted felon was discussed but not challenged during the suppression hearing. Before his bench trial, Kendricks signed a stipulation admitting that he had "constructive possession of a loaded firearm" and that he "had been convicted in a 'court of a crime punishable by imprisonment for a term exceeding one year,' that is, a felony offense." (Cr-Doc. 118 at 1–2). During his bench trial, Kendricks did not challenge the stipulation or present any evidence. (Cr-Doc. 153 at 13–14). At sentencing, Kendricks lost on his claim that the four prior felony convictions used as ACCA predicates were not his. (Cr-Doc. 154 at 6, 9, 70–72).[6] Notably, however, Kendricks never challenged his other felony convictions, which included burglary and grand theft (1993CF736) that resulted in a seven-year probation violation prison sentence (Cr-Doc. 133 ¶ 34), a three-year sentence for possession of controlled substances (2007CF705) (*id.* ¶ 38*)*, and a 41-month sentence for possession of various

---

[6]  Defense counsel did not challenge Kendricks's cocaine conviction. (Cr-Doc. 154 at 18).)

controlled substances (2011CF2731) (*id.* ¶ 42). Nor did Kendricks challenge the Florida Department of Corrections' incarceration history included in his presentence report. (Cr-Doc. 133 at 109). Therefore, Kendricks's *Rehaif*-related claims, when analyzed under the lesser, plain error direct appeal standard as applied in *Reed*, fail to show that his substantial rights were affected or that the error seriously affected the fairness, integrity, or public reputation of the proceedings. Grounds Two and Three are denied as meritless.

### *Ground IV*

Kendricks argues that his defense counsel was ineffective in failing to raise the claims in Grounds One through Three earlier. (Doc. 4 at 10–11). To succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) his counsel's performance was deficient, and (2) resulting prejudice to the defense of the case. *See Strickland v. Washington*, 466 U.S. 668, 693 (1984). This Court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial actually worked adequately.

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992)).

To establish deficient performance, a petitioner must show that "no competent

counsel would have taken the action that his counsel did take." *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

Here, defense counsel's performance was not deficient, given the binding case precedents discussed in the Court's analysis of Grounds One through Three. Counsel is not ineffective for failing to raise a meritless claim. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue a meritless issue). Kendricks also cannot show prejudice. Nowhere in his motion does he assert that he did not know he was a felon at the time he possessed the loaded firearm. Rather, he claims that the indictment did not "charge that [he] 'knew' he was convicted felon," at the time he possessed the firearm. (Doc. 4 at 9). The record in this case demonstrates, however, that Kendricks knew he was a convicted felon prior to possessing the firearm. Ground Four is, therefore, denied as meritless.

### Supplemental Claim

Kendricks argues that he is not subject to the ACCA enhancement because his Florida convictions for aggravated assault and aggravated battery do not qualify as

14

predicate offenses, as they are no longer "violent felonies," after the Supreme Court's opinion in *Borden*.

The Eleventh Circuit has repeatedly held that Florida convictions for aggravated assault and aggravated battery are "violent felonies" within the meaning of 18 U.S.C. § 924(e). *Turner v. Warden*, 709 F.3d 1328 (11th Cir. 2013) (Florida aggravated assault satisfies ACCA elements clause) *U.S. v. Gandy*, 710 F.3d 1234 (11th Cir. 2013) (Florida aggravated assault on law enforcement officer satisfies ACCA elements clause). *United States v. Golden*, 854 F.3d 1256 (11th Cir.), *cert. denied*, 138 S. Ct. 197 (2017) (affirming *Turner* under prior panel precedent rule). In *Borden*, the Supreme Court considered whether the defendant's conviction in Tennessee for reckless aggravated assault qualified as a violent felony and ruled that: "Offenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA." 141 S. Ct. at 1834. Therefore, after *Borden*, an offense that can be committed by reckless causation of injury, and nothing more, does not satisfy the ACCA's elements clause.

However, the Eleventh Circuit has since held, in *Somers v. United States*, 66 F.4th 890 (11th Cir. 2023), that "aggravated assault under Florida law requires a *mens rea* of at least knowing conduct and, accordingly, . . . it qualifies as an ACCA predicate offense under [*Borden*]." 66 F. 4th at 892.        Somers argued that his prior conviction for Florida aggravated assault with a deadly weapon could not serve as an ACCA predicate because it could have been committed with a *mens rea* of recklessness. *Id.* The Eleventh Circuit disagreed and held that aggravated assault under Florida law requires

15

a *mens rea* of at least knowing conduct, which qualifies as an ACCA predicate conviction under *Borden*. *Id.* In so holding, the Eleventh Circuit relied on guidance from the Florida Supreme Court, which held that the first element of the assault statute, section 784.011(1), Florida Statutes, requires not just the general intent to volitionally take the action of threatening to do violence, but also that the actor directs the threat at a target—another person. *Id.* at 893, relying on *Somers v. United States*, 355 So. 3d 887, 891–93 (Fla. 2022). The Florida Supreme Court, therefore, held that the Florida assault statute demands the specific intent to direct a threat at another person and cannot be violated by a reckless act. *Somers*, 355 So. 3d at 892–93. Accordingly, Kendricks is subject to the ACCA enhancement because his Florida convictions for aggravated assault and aggravated battery are still considered qualifying predicate offenses as "violent felonies." Kendricks's supplemental claim is, therefore, denied as meritless.

### IV. CONCLUSION

Kendricks's amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 3) and his supplemental section 2255 claim (Doc. 8) are **DENIED**. The Clerk is directed to enter judgment against Kendricks, to close this case, and to enter a copy of this order in the criminal action.

Kendricks is not entitled to a certificate of appealability. To obtain a certificate of appealability, a petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to

raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linehan*, 279 F.3d 926, 935 (11th Cir. 2001). Because Kendricks fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, he is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

    **DONE AND ORDERED** in Tampa, Florida, on April 7, 2026.

Charlene Edwards Honeywell
United States District Judge

*Copies to:*
Pro se Movant
Counsel of record

17